IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| CLOSNER CONSTRUCTION CO., LLC | § | CASE NUMBER 11-50060 |
| | § | (Chapter 11) |
| | § | |
| Debtor. | § | |

<u>DEBTOR'S FIRST AMENDED COMBINED PLAN AND DISCLOSURE STATEMENT</u>

On February 28, 2011, Closner Construction Co., LLC, ( the "Company") filed a voluntary petition for reorganization under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Laredo Division.

After the filing of the Bankruptcy petition, the Company was authorized to continue in business under the protection of the Bankruptcy Code and to attempt to work out an arrangement with Creditors on a plan for payment of its debt. This document explains how the Company proposes to pay Creditors and remain in business. If the Bankruptcy Court approves this plan, Creditors rights to collect their debt will be limited by federal law (the Bankruptcy Code). If the plan is approved, Creditors will only be allowed to collect their debt from the Company as provided in this document.

1. **Definitions**

As used in the Plan, the following terms shall have the respective meanings specified below:

1.1. Administration Claimant: Any person entitled to payment of an Administration Expense.

1.2. Administration Expense: Any cost or expense of administration of the chapter 11 case entitled to priority under Section 507(a)(1) and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor' estates, and actual and necessary expenses incurred post-petition by the Debtor-in-Possession, any indebtedness or obligations incurred by or assessed against the Debtor-in-Possession, or for the acquisition or lease of property or for providing of services to the Debtor-in-Possession, and allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, and any fees or charges assessed against any of the Debtor' estates under Chapter 123, Title 28, United States Code.

1.3.    Allowed Claim: Any claim against the Debtor, proof of which was filed on or before the last date designated by the Bankruptcy Court as the last date for filing proofs of claims, if no proof of claim is filed which has been or hereafter is listed by the Debtor as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed or such Claim has been allowed in whole or in part by a Final Order. Unless otherwise specified in the Plan, "Allowed Claim" shall not, for the purposes of computation or Distributions under the Plan, include post-petition interest on the amount of such Claim.

1.4.    Allowed Priority Tax Claim: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

1.5.    Allowed Secured Claim: A Secured Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

1.6.    Allowed Unsecured Claim: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

1.7.    Bankruptcy Code: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

1.8.    Bankruptcy Court: The unit of the United States District Court for the Southern District of Texas, Laredo Division, having jurisdiction over the chapter 11 case, or in the event such court ceases to exercise jurisdiction over the chapter 11 case, such court or adjunct thereof that exercises jurisdiction over this chapter 11 case in lieu of the United States Bankruptcy Court for the Southern District of Texas.

1.9.    Bankruptcy Rules: The Rules of Bankruptcy Procedure as amended, as applicable to the chapter 11 case.

1.10.   Cash: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

1.11.   Chapter 11 Case: These cases under chapter 11 of the United States Bankruptcy Code

in which Closner Construction Co., LC is the Debtor-in-Possession.

1.12.   Claim: Any right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured.

1.13.   Committee: Any Committee of Creditors appointed by the United States Trustee in the chapter 11 case pursuant to Section 1102 of the Bankruptcy Code.

1.14.   Confirmation Date: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

1.15.   Confirmation Order: An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

1.16.   Creditor: Any person that has a Claim against the Debtor that arose on or before the Petition Date.

1.17.   Debtor-in-Possession: Closner Construction Co., LC as Debtor-in-Possession.

1.18.   Debtor: Closner Construction Co., LC the Debtor under this chapter 11 case.

1.19.   Distributions: The property required by the Plan to be distributed to the holders of Allowed Claims.

1.20.   Effective Date: The first day of the month following ten days after the Confirmation Date.

1.21.   Final Order: An order or judgment of the Bankruptcy Court which has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

1.22.   Payment Date:   Payments required under the Plan will begin on the fifteenth day following the Effective Date.

1.23.   Petition Date: February 28, 2011, the date these chapter 11 petitions for relief was filed.

1.24.   Plan: This Plan of Reorganization, either in its present form or as it may be altered, amended, or modified from time to time.

1.25.   Priority Non-Tax Claim: Any claim other than Administrative Expense or a Priority Tax Claim to the extent entitled to priority and payment under Section 507(a) of the Bankruptcy Code.

1.26.   Priority Tax Claim: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

1.27.   Reorganized Company: The new company emerging from the reorganized Debtors pursuant to the confirmed plan of reorganization.

1.28.   Schedules: Schedules and Statement of Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

1.29.   Unsecured Creditor: Any Creditor that holds a Claim which is not a Secured Claim.

## 2.   Why Did the Company File this Bankruptcy Case?

The Company is in the business of building underground sewer systems, paving, and site work for construction projects.

Most of the Company's work, before filing, was building sewer systems for municipalities and other government entities. These public entities were very slow to pay for work performed by the Company, causing the Company to experience inadequate cash flow.

The public entities also began to spend less money for public projects with the recession. The Company found that it had fewer and fewer contracts with public entities.

The Company's principal creditor is BBVA Compass Bank. The Company tried to renegotiate its debt with the Bank to lower principal and interest payments in 2007. These negotiations resulted in all of the indebtedness of the Company and three other entities closely affiliated with the Company through Closner family connections, signing a cross default and cross collateralization agreements pledging all of their assets to secure all of the indebtedness of these entities to Compass Bank. The other three entities are: Hidden V Development, LLC, Construction Depot, LC, and La Feria BP Properties, Ltd. The Company believes that it will have the cash flow to repay all of its debt and any deficiencies that may remain for these other Closner affiliated entities.

-4-

It's inadequate cash flow and the decline in demand for its services caused to the Company to default on its indebtedness to BBVA Compass Bank, and the Bank to post the Company's assets, both real and personal for foreclosure.

The Company and the Bank tried for almost six months before the filing of this case to negotiate a work out of the Company's debt to the Bank, but were not able to do so.

All of the indebtedness of the four Closner entities is guaranteed by Jaime and Norma Closner, the shareholders of the Company.

The Company believes that by liquidating assets of the other three Closner related entities, and by changing its business model to pursuing more work in the private sector, including expanding its area of service to the Eagle Ford chalk, the Company will increase its cash flow to allow it to pay in full all of its creditors, as well as any debt remaining to the other three Closner entities.

**3.     What Has Happened Since the Bankruptcy Case Was Filed?**

The Company has aggressively pursued contracts in the private sector with clients who pay their bills on a monthly basis for services performed.   The Company projects that it can increase its monthly net cash flow to at least $75,000.00 beginning in the month of October 2011, and that its new contracts will allow it to sustain this level of net income to pay its debts and those of the other three Closner entities.

Construction Depot , LC  has entered an  agreed order to surrender collateral to creditors to reduce it indebtedness.

La Feria Business Park  has signed a contract to sell the business park for $3,000,000.00.

All of these efforts are to reduce the remaining debt of the Company and the other Closner entities to a level that the net cash flow for the Company can pay as provided herein.

**Exhibit A** shows the Company  income and expenses during the time that the Company  has been in bankruptcy.

**4.     How Does the Company  Propose to Pay its Debts?**

CASH FLOW

The Company has worked to increase its contracts with private clients who pay their bills monthly. The Company's net accounts receivables will be used to repay in full any indebtedness that remains due and owing by any of the Closner entities after the application of the sales proceeds. A copy of the Company's Projected Cash Flow is attached hereto as **Exhibit A.**

The Company is receiving new service orders from its clients.   The Company projects that it will generate monthly net cash flow in excess of $75,000 per month.   It's total monthly debt service under the plan  is $33,705.36.

SURRENDER AND SALE OF ASSETS OF THE COMPANY AND OTHER CLOSNER ENTITIES:

SURRENDER OF ASSETS

The Company has fifty acres in a site East of Laredo that it proposes to surrender to the lienholder, BBVA Compass Bank for the consideration of $570,000.00 in credit against the indebtedness owed to the Bank by both the Company and the other affiliated Closner entities.

**5.      Creditors Divided into Classes.**

The Bankruptcy Code requires the Company to divide creditors into classes.   That is, creditors with similar legal rights are put into the same class.  All creditors and the classes they are in are shown in paragraph 10 of this document.

**6.      Creditors Have the Right to Vote on the Plan.**

After reading this plan and disclosure statement, Creditors will have the right to vote  on whether the Bankruptcy Court should "confirm" this plan.  Each creditor should read this combined plan and disclosure statement carefully, discuss it with a lawyer, and then fill out the ballot that is attached.   The Company will  assemble the ballots and report to the Bankruptcy Judge on _____ __, 2011.  The Court will conduct the "Confirmation Hearing" in this case to decide whether to "Confirm" the plan on _____ ___, 2011 at _____ p.m.  at the Bankruptcy Courtroom,  Laredo, Texas 78040.

**7.      Creditors Also Have the Right to Object to this Disclosure Statement and Creditors Have the Right to Object to the Confirmation of the Plan.**

If a creditor believes that this combined plan and disclosure statement does not contain sufficient information to decide whether to vote for (or against) this plan, the Creditor may file a written objection with the Bankruptcy Court.  If a creditor believes that the plan does not meet the requirements of the Bankruptcy Code, the creditor may file a written objection with the Bankruptcy Court.  The deadline for objections has been set for _____ __, 2011.

**8.      The Court May Approve this Plan and limit Creditor's Legal Rights.**

The Court will consider only written objections that are timely filed and ballots that are timely filed. If  no objections are filed (or if all objections are overruled by the Court) and at least one class of creditors accepts the plan, the Court may approve the plan.   If the Court approves the

plan, all creditors will be bound, even if a Creditor did not vote and even if a creditor voted against the plan.  This means that a Creditor will not be allowed to collect its claim against the Debtor except as provided in the Plan.

**9.      How Does a Class "Accept" the Plan?**

Each class is considered separately.  Only the creditors who vote are counted.  The Court will conclude that the class "accepts" the Plan if two requirements are met:

> (1)      More than 50% of the voting creditors vote in favor of the plan; and,
>
> (2)      Those creditors voting in favor of the plan hold at least 2/3 of the total amount of the debt that is voted.

**10.      Which Class are you as a Creditor in, and How Does the Company Propose to Pay the Class Under the Plan?**

Attached hereto as **Exhibit B** is a list of the Company's creditors and how the Company proposes to pay them under the Plan.

The total of the monthly payments under the Plan, beginning on the third month following the Effective Date  is $33,705.36.   Claims will participate as provided in **Exhibit B**.

**11.      What If a Creditor Is Not Listed in Paragraph 10 above?**

Paragraph 10  lists all creditors who will have an allowed claim.  The proof of claim deadline was August 8, 2011.  The government proof of claim deadline was August 28, 2011, 2011.  All claims  that the Company  agrees to pay (or that are disputed) are listed in paragraph 10.  If a claim is not listed in paragraph 10, the Company will not pay any money to that Creditor, but the Creditor's claim will nevertheless be discharged, (i.e., Even though the creditor will not be paid any money, the Creditor will not be allowed to collect any money from the Company.)  If a Creditor believes that this violates its legal rights, the Creditor should contact a lawyer and file an objection with the Court.

**12.      What to Do for More Information?**

Creditors should talk to a lawyer about their rights and responsibilities in this case.  Creditors should have their lawyers call the lawyer for the Company.   The Company's lawyer is:

> Carl M. Barto
> 817 Guadalupe
> Laredo, Texas 78040
> (956) 725-7500.

If a creditor does not have a lawyer but still wants more information, that creditor can call the Company's lawyer directly. HOWEVER, REMEMBER THAT THE COMPANY'S LAWYER CANNOT GIVE CREDITORS LEGAL OR FINANCIAL ADVICE BECAUSE THE COMPANY'S LAWYER REPRESENTS THE COMPANY  NOT  CREDITORS.

**13.     How Much Does the Company Propose to Pay Creditors?**

See paragraph 10 above.

**14.     Does the Company  Have Enough Money and Earnings to Make the Payments Called for in the Plan?**

Yes.  See **Exhibit A**.

**15.     Are there any alternatives to the plan?**

The are two alternatives,  liquidation or dismissal.  A liquidation may not bring a sufficient amount to pay the secured debt in full as well as the unsecured debts. Attached hereto as  **Exhibit C** is a liquidation analysis.

Dismissal will probably lead to liquidation, since the Company needs the protection of Chapter 11 in order to be assured that it will be able to work out a payment plan with the IRS.

**16.     Is There Any Risk That the Plan Might Not Succeed?**

Yes, the Company makes money by providing services in paving and construction business. If there is a decline in the need for these services  the Company  may not be able to make enough money to pay the plan.  There is also a risk that people or companies purchasing the Company's services will not pay for those services on time.  This would deprive the company of the money necessary to make its plan payments.

**17.      Are There Any Tax Effects of this Plan?**

a.      Tax effects for the company.   The Company suffers no tax effects because it is insolvent.

b.      Creditors should consult their own tax advisors.

**18.     Default Provisions Concerning the IRS**

A.      A failure by the Debtor to make a payment to the IRS pursuant to the terms of the plan shall be an event of default; as to the IRS, there is an event of default if payment is not received by the 15th of each month; if there is a default as to the IRS, IRS must

send written demand for payment to the Debtor and said payment must be received by the IRS within fifteen (15) days of the date of the demand letter; the Debtor can receive up to five (5) notice of default from the IRS, the fifth (5th) default cannot be cured and the IRS may accelerate its allowed claim(s), past and future, and declare the outstanding amount of such claim(s) to be immediately due and owing and pursue any and all available state and federal rights and remedies. These default provisions pertain to the entire claim(s) of the IRS, secured, unsecured priority and unsecured general.

B        The IRS is bound by provisions of the confirmed plan and is barred under 11 U.S.C. § 1141 from taking any collection action against the Debtor for pre-petition claims during the duration of the plan (provided there is no default as to the IRS). The period of limitations of collection remains suspended under 26 U.S.C. § 6503(h) for tax periods being paid under the plan and terminates on the earlier of (1) all required payments to the IRS having been made; or (2) 30 days after the date of the demand letter (described above) for which the Debtor failed to cure the default.

**19.    Default Provisions Concerning the Texas Workforce Commission and the Texas Comptroller of Public Accounts.**

If the Reorganized Debtor fails to make an installment payment to either the Texas Workforce Commission or the Texas Comptroller of Public Accounts pursuant to the terms of the Plan, and if such failure is not cured within twenty (20) days following written notice to the Reorganized Debtor then the entity sending the notice of default may seek to enforce the entire amount of its claim and exercise any and all rights and remedies it may have under applicable non bankruptcy law and seek such relief as may be appropriate in the Bankruptcy Court.

**20.    Default Provisions Concerning All other Creditors.**

If the Reorganized Debtor fails to make an installment payment to any creditor other than the IRS, the Texas Workforce Commission or the Texas Comptroller of Public Accounts, pursuant to the terms of the Plan, and if such failure is not cured within twenty (20) days following written notice to the Reorganized Debtor then the entity sending the notice of default may seek to enforce the entire amount of its claim and exercise any and all rights and remedies it may have under applicable non bankruptcy law and seek such relief as may be appropriate in the Bankruptcy Court.

**21.    Preservation of Lien Status and Collateral and Additional Events of Default:**

To the extent that creditors are secured by  perfected liens on collateral they will retain their lien status until or unless the collateral is sold and the net proceeds of sale are paid to the secured party.  The reorganized Debtor will maintain insurance on all collateral in amounts and types

necessary for the businesses of the Debtor.   Creditors may inspect the collateral or receive proof of insurance on written request to the Reorganized Debtor, all of which requests must be responded to by the Reorganized Debtor within seven days of receipt.   Debtor will further preserve the collateral by paying on or before their due date all ad valorem taxes on Collateral.   Failure to comply with any of these provisions will be an event of default under the Plan.

**22.     Please Vote for this Plan.**

The Company asks that the Creditors vote in favor of this plan because it will allow the Company to pay  all of its creditors in full and still stay in business.  The Company thinks that is more than the creditors will receive if the plan is not confirmed.

REMEMBER THAT THE DEADLINE FOR BALLOTS IS _____ __, 2011.

Mail your ballot to:

Carl M. Barto
817 Guadalupe
Laredo, Texas 78040
(956) 725-7500.

Closner Construction Co., LLC

BY: /S/ Jaime Closner
Jaime Closner, President

 /S/ CARL M. BARTO
Carl M. Barto
Attorney for Closner Construction Co., LLC

-10-